Document Number Case Number
03-C-0510-C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
10/25/2004 05:14:18 PM CDT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

PENNY LEE ANDERSON and
RUSSELL D. ANDERSON, SR.,

           Plaintiffs,

        v.

TRANS UNION, LLC, EXPERIAN
INFORMATION SOLUTIONS, INC., CSC
CSC CREDIT SERVICES, INC., and
EQUIFAX, INC.d/b/a EQUIFAX
INFORMATION SERVICES, LLC,

           Defendants.

CASE NO. 03-C-0510-C

JUDGE BARBARA B. CRABB

---

## SECOND AFFIDAVIT OF CHRISTOPHER T. LANE, ESQ.

---

I, Christopher T. Lane, Esq., hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.    Edward McKenna, Cross Country Bank's 30(b)(6) representative, gave deposition testimony under oath on June 28, 2004.

2.    I participated in Mr. McKenna's deposition on behalf of Trans Union, LLC.

3.    Attached as Exhibit A are true and accurate copies of portions of the transcript reflecting the deposition testimony given by Mr. McKenna including select Exhibits associated therewith.

4.    Specifically, pages 21, 56-59, 113, 117, 118 and Exhibits 14 and 23 of Mr. McKenna's deposition have been attached as Exhibit A.

5.    Eileen Little gave deposition testimony under oath on behalf of Trans Union on September 23, 2004.

6.     Attached as Exhibit B are true and accurate copies of pages 34, 37, 38 and Exhibit 8 of Ms. Little's deposition.

7.     Glen R. LeBlanc, Capital One's 30(b)(6) representative, gave deposition testimony under oath on June 10, 2004.

8.     I participated in Mr. LeBlanc's deposition on behalf of Trans Union.

9.     Attached as Exhibit C are true and accurate copies of pages 11-13, 18 and 23-27 of Mr. LeBlanc's deposition testimony.

I AFFIRM UNDER THE PENALTIES FOR PERJURY THAT THE FOREGOING REPRESENTATIONS ARE TRUE AND ACCURATE, TO THE BEST OF MY KNOWLEDGE AND BELIEF.

/s/Christopher T. Lane
Christopher T. Lane

21

1   of that account, is that correct?  Am I correct?

2        A    Yes, that's correct.

3        Q    And subsequent to it coming off, it went

4   back on?  Do you remember that?

5        A    No, it did not.

6        Q    When did it come off?

7        A    Just I believe very late 2003.  I'd have to

8   look at the specifics to get the date.  But late 2003.

9        Q    And that was on one account, correct?

10       A    Yes.

11       Q    Were there any other Cross Country accounts

12   that either or both of these plaintiffs had that had

13   the deceased notation on it?

14       A    The account was apparently originally opened

15   as a Master Card account.  It was subsequently

16   converted to a Visa account.  The Master Card account

17   then being closed.  And for a period of time, both the

18   Master Card and the Visa account were reported.

19       Q    And is that the usual procedure for Cross

20   Country Bank to report a closed account for some period

21   after the account's been closed?

22       A    Yes.

23       Q    Now, if you would be so kind, tell us what

24   the distinction is between a Master Card issued by

6 (Pages 18 to 21)

EXHIBIT

A

McKenna

tabbies*

Edward McKenna

56

1        MR. BRYCE:  I have just handed it to him.
2    So you can answer the question, Mr. McKenna.
3        THE WITNESS:  Again, we don't routinely see
4    this.  But I have come to know that this is a dump of
5    the reporting record that First Data Resources
6    generates on our behalf to each of the credit bureaus.
7    BY MR. LYONS:
8        Q    All right.
9        A    This is the automated reporting.
10       Q    All right.  And does it have any history in
11   it as to, from time to time, what was done?  Do you
12   know?
13       A    I don't believe it does.
14       Q    On the first page there, about in the middle
15   column, about halfway down, there is a CHD deceased
16   flag and a B over at the right-hand margin.  Do you
17   know what that means?
18       A    That's the flag that was set at the address
19   change.
20       Q    Okay.  And what's that B on there?
21       A    That's the setting that indicates that
22   generated the deceased comment for the account.
23       Q    All right.  Are there other letters that can
24   be applied on that line for deceased flag B, C, D, E, F

57

1   or anything like that, that you know of?

2       A    I'm not sure of all the uses.  I just looked

3   into this.  But there are other flags on that for other

4   purposes that have nothing to do with deceased.

5       Q    All right.  I am thumbing through this and I

6   would like you to thumb through it also, sir, before we

7   mark it as an exhibit.  Do you see on the first page in

8   the middle from left to right, as you're looking at it,

9   it says, reporting date, 10/10/2001?  And then if

10  you'll turn a couple of pages.  As a matter of fact, if

11  you'll go to the fourth page, you see reporting date

12  11/9/2001.

13          And if you'll go to the fourth page after

14  that, the reporting date, 12/10/2001.

15      A    Yes.

16      Q    Do you know how this document came into

17  being?  You said this is how First Data reports or

18  transmits data.  It's a hard copy of that.

19          Do you know how it actually came into being

20  with respect to this litigation, this lawsuit?

21      A    No, I don't.

22      Q    Can you tell us if you know whether or not

23  the months before 10/10/2001 are accessible through

24  First Data?

58

1  A I don't know.

2  Q I would have to ask First Data or who could

3 I ask at Cross Country Bank or Applied Card Systems?

4  A We can find out.  I don't know specifically

5 who to ask.  But we can ask what records are available.

6  Q All right.  Okay.

7   All right.  Let's then go back to Exhibit

8 18.  And we were in January 3rd, 2001.  And then if we

9 flip back and forth through here and find entry number

10 seven, which is on the fifth page, that's January 16th,

11 2001.  Do you see that?

12  A Yes, I do.

13  Q Now, there is a HAL, H-A-L.  Is HAL a person

14 or would that be a computer?

15  A I believe that's a computer.  That looks

16 like a standard message when we mark an account that

17 has an offer available to them.

18  Q And then eight is a July 13th, '01, entry.

19 And that's also an automated entry?

20  A Correct.

21  Q What about 09 that has no person or no

22 identifying operator in the second column?  What does

23 that mean again?

24  A That's a conversion of the account from

59

1   Master Card to Visa on May 9th of '02.  You see both
2   account numbers in the memo line.
3       Q    But that's when that happened?
4       A    Correct.
5       Q    And then if we turn over to the second page
6   of Exhibit 18, we see the heading at entry 10, which is
7   the fourth up from the bottom.  That does say, account
8   converted from Master Card?
9       A    Yes.
10      Q    What's Master Card listed as XREF3?  What
11  does that stand for?
12      A    On the new Visa account record, the Master
13  Card account record, will be reflected in a cross
14  reference field on that account.
15      Q    And in that cross-referencing, is that, from
16  your understanding, is that when the deceased flag
17  followed from the Master Card to the Visa card?
18      A    Yes.  The whole record was moved.
19      Q    On item number 11, which is on the fifth
20  page of this exhibit, there is an entry for October
21  10th, 2002.  What is that?
22      A    I'm going to read it.  It's nothing that's
23  directly familiar to me.
24      Q    All right.  Number 12 is above it.  B6V.

113

1    is checked, is that correct?
2        A    Yes.
3        Q    And there is also a box for change data as
4    shown.  And that box is not checked, is that correct?
5        A    That's correct.
6        Q    Now, your company understands that if they
7    check the box verified as reported, no changes will be
8    made?
9        A    That's correct.
10       Q    So you would not expect that in response to
11   your company having checked the verified as reported
12   box, you wouldn't expect any change to be made?
13       A    That's correct.
14       Q    No change to the ECOA Code?
15       A    Yes.
16       Q    And it would be your expectation that Trans
17   Union's system would still maintain the X in the ECOA
18   Code section of its report, correct?
19       A    Upon review, yes.  I'm sure they expected it
20   to be changed when they filled it out.
21       Q    Okay.  I'm sorry I didn't get that.
22       A    I said, upon reviewing it, and this
23   discussion expected, wouldn't be changed, but the
24   intention was to have it changed.

117

1   company, correct?
2       A    That's correct.
3       Q    Are you familiar with Exhibit 22?  Do you
4   know what that document is?
5       A    Not specifically, no.  I presume it's Trans
6   Union's record of the response.
7       Q    Okay.  What about the name at the bottom,
8   Linneir Clarke?  Does that ring a bell as someone at
9   your company?
10      A    Not specifically.  But judging by the phone
11  number, I believe that's one of the contact phone
12  numbers that we have seen before for the company.
13      Q    Now, Trans Union Systems evidenced on
14  Exhibit 22 shows that this ACDV was returned with the
15  section verified as reported code check.
16          Do you believe that those pages of Exhibit
17  14 reflect something other than that being said to
18  Trans Union?
19      A    Yes.
20      Q    And what do you believe was sent to Trans
21  Union?
22      A    Again, the dates are slightly different.  So
23  I'm not sure they are in response to the same thing.
24  But in Exhibit 14, there is two items that have the

118

1    handwritten note, removal of deceased status, on one.
2    And that's the one that has Penny's name at the top.
3    Well, they both have Penny's name at the top.  That's
4    the one on the Visa account, beginning with four and
5    ending with 6736.
6         And the other one from the same date,
7    December 12th, '02, delete the entire trade line,
8    related to the Master Card account beginning with five
9    and ending in 3912.  Again, the dates are different.
10   So I can't affirm what's in response to what.  The date
11   on that again, 12/12/02, is handwritten.
12       Q    Those were the UDF's?
13       A    Correct.
14       Q    With respect to the dispute back in November
15   of 2002?
16       A    The Trans Union form?
17       Q    Yes.
18       A    Okay.
19       Q    Again, our records indicate that Linneir
20   Clarke verified the account as reported.  And I want to
21   know if you have any reason to disagree with that, that
22   on that date, I believe, sometime in November '02, in
23   response to that dispute, Cross Country Bank verified
24   that account as reported?

```
ADVS ID: 690544                         UNVERIFIED                    Created: 11/14/2002
Clinic?: U              AUTOMATED CONSUMER DISPUTE VERIFICATION         Sent: 11/14/2002
                        --------------------------------            Received: 11/14/2002
    User:                                                       Response Due: 11/20/2002

---------------------- ORIGINATOR INFORMATION ----------------------------
TRANS UNION                             Office:  912 Mailbox#:UPROD
P.O. BOX 3000                                                       Source: TUN
CHESTER                        PA 19022-3000Ctrl#:1148627430020103_3AN

--------------------- RESPONDER INFORMATION -----------------------------
Subscriber #: B 24UB126   Short Name: CRS CNTY BK

--------------------- DISPUTE INFORMATION -----------------------------
   Dispute #1: 028- Subscriber comment/remarks message disputed.


--------------------- CONSUMER INFORMATION -----------------------------
Acct#: 4227097484406736              GC SSX       D.O.B.      Age
Name.: ANDERSON, RUSSELL D.         S, 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 09/01/1960
AKA..: ,                             Phone #: (000)246-2213
Current Address:
   Street..: 1614 HALLEWOOD BV
   City, ST: NEW RICHMOND, WI                    Zip: 54017-2400
Previous Address:
   Street..: 1380 HERITAGE DR 17
   City, ST: NEW RICHMOND, WI                    Zip: 54017-

----------------- CURRENT/HISTORICAL ACCOUNT INFORMATION -----------------
Date  |  /---- Present Status ----\  | High  |Pmt Hist. Curr: B  |Type|
Opened |  Date  Cond  Balance Past Due| Balance| 1-12: 000000000000 |Acct|MOP
04/1999|10/01/2002   1847      0|   1959|13-24: 000000000000 |  R | 01

Metro Stat| Credit ;   |Date of|Date of  Serious/ |  Date |Hist. Status |
Date Code|  Limit |Trm|Lst Pmt.Action |ChrgOff Amt| Closed|#Mo. 30 60 90|ECOA
   /    ;    1900|   | /       |          |    /  |  0    0  0  0|  X
```

Acct|Own/| Monthly|Pmts| Max. Delinquency |Max.Deling|Max.Deling|Most Recent
Type|Rent| Payment| Due| Date    Amount MOP| Date MOP| Date MOP|1:   /
18  ;    |        |  0|  /               |     |    /     |    /    |2:   /

Code/Remark:   /                              SCC:       Undef.Amt:

Remark1: DECEASED
Remark2:



DEPOSITION
EXHIBIT
#14
6/28/04

E-Oscar Web - Reports

**Return this dispute response to:**

TransUnion LLC

2 Baldwin Place Crum Lynne, PA 19022--

FAX # 6105464602

**Account Number** 4227097484406736

**Subscriber Code**    Applied Card Systems/24UB126

Date : 01-08-2003

Control # 11486279500501001N

**FCRA Response Due Date** 01-15-2003

**Response Date**    01-17-2003

Please check the SAME box for each identification item appearing on the which is identical to your records;or provide differing information in the shaded area.

SAME

| | | |
|---|---|---|
| **Name/Gen Code** PENNY L ANDERSON / --- | ☐ | **Name/Gen Code** penny - anderson / -- |
| **Address** 1614 HALLEWOOD BV, NEW RICHMOND WI 54017-- | ☐ | **Address** 1614 hallewood blvd, new richmond WI 54017-2400 |
| **Prev Name/Prev Gen Code** URMSTON,PENNY - ROSSO,PENNY,L / --- | ☐ | **Prev Name/Prev Gen Code** - - - / -- |
| **Prev Address** 1614 WILDWOOD AV, NEW RICHMOND WI 54017-- | ☐ | **Prev Address** -, - -- |
| **SSN/DOB** 001589006 / 12-01-1970 | ☐ | **SSN/DOB** - / 01-01-1960 |
| **Telephone Number** 0002462213 | ☐ | **Telephone Number** 6036680384 |
| **2nd Prev Addr** 1380 HERITAGE DR 17, NEW RICHMOND WI 54017-- | | |

**Consumer States/Comments:**

Dispute Code 1: 101:Consumer not liable for account (i.e. ex-spouse, business). If liable, provide complete ID and ECOA

Dispute Code 2: 107:Disputes Special Comment/Compliance Condition Code/narrative remarks. Verify accordingly

FCRA Relevant Information:

**Please write clearly and report changed information in the shaded box directly below where it is currently reported.**

Verified as Reported ☑        Change Data as Shown ☐        Delete Account ☐

| Acct Status | Pay Rate | MOP | Cond/Cumm Status | Date Opened | Balance | Amt Past Due | High Cr/Org | Credit limit | Org Chg Amt |
|---|---|---|---|---|---|---|---|---|---|
| 11 | | | | 04-01-1999 | 1141 | 0 | 1959 | 1900 | |
| - | | | | | | | | | |

| Acct Type | Portf Type | Terms Dur | Freq | Activity Date | Date Closed | Date of Last Pymnt | Sch Pymnt | ECOA | Status Date (EXP only) | FCRA DO |
|---|---|---|---|---|---|---|---|---|---|---|
| 18 | R | REV | - | 12-01-2002 | - | - | 35 | X | - | - |
| - | | | | | | | | 1 | | |

| CCC | SCC | CII | Orig Cr Name | Orig Cr Class | Spec Pymnt Ind | Deferred Start Date | Balloon Date | Balloon Amt |
|---|---|---|---|---|---|---|---|---|
| - | - | - | - | - | - | - | - | - |
| - | - | - | | - | | - | | |

Accounts History

| | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 | 0 | B | - | - | - | - | - | - | - | - | - | - | - | - | - | | |

| Agency ID | Sec Mktg Agency Acct # | Mortgage ID |
|---|---|---|
| - | - | |
| - | - | |
| Actual Pymnt | Portfolio Indicator | Prchsd from/Sol |
| - | - | - |
| | --- | |

Remarks : DECEASED

## UNIVERSAL DATA FORM

This form is for reporting or updating account information

☐ New   ☐ Delete   ☐ Change   change makes trade current is previous delinquency history or bad debt?   ☐ YES   ☐ NO

☐ Automated   ☒ Manual
Do not include security passwords with codes below

| | | |
|---|---|---|
| Subscriber Name | Cross Country Bank | Subscriber Code   458BB02969 |
| Subscriber Address | 800 Delaware Ave 8th Floor | Subscriber Code   1216355TNAI |
| | Wilmington, DE 19801 | Subscriber Code   B244B008 |

### CONSUMER INFORMATION

| Surname | First | M | Suffix | SSN | DOB/Age |
|---|---|---|---|---|---|
| Anderson | Penny | | | 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 | 01-1960 |

| Current Address | City | State | ZIP |
|---|---|---|---|
| 1614 Hallewood Blvd | New Richmond | WI | 54017 |

| Previous Address | City | State | ZIP |
|---|---|---|---|
| | | | |

| Current Employer Name | Occupation | City | State |
|---|---|---|---|
| | | | |

| Co-Applicant Surname | First | M | Suffix | SSN | DOB/Age |
|---|---|---|---|---|---|
| Anderson | Russell | | | 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 | |

### Additional Co-Applicant Information (Complete only if Joint Account)

| Co-Applicant Surname | City | State | ZIP |
|---|---|---|---|
| Anderson | New Richmond | WI | 54017 |

| Co-Applicant Employer Name | Occupation | City | State |
|---|---|---|---|
| | | | |

### CURRENT HISTORICAL ACCOUNT INFORMATION

| Account Number | Date Open | Present Status   Delete | High Balance | Payment History | | Type Acct/ MOP |
|---|---|---|---|---|---|---|
| 5114-9070 9890-3912 | | Date 12/6/02   Current Balance | Amount Past Due | Indicates whether History is: MOP | No of Payments Delinquent | |
| Cross Country Bank | | | | | | LIR |

| Metro Status Code | Cred Lim | Terms/ Amount | Maximum Delinquency Date Amount MOP | Status or Closed Date | | ECOA |
|---|---|---|---|---|---|---|
| | | | | | | 2 |

| Type of Loan/Collateral | Special Comments/Remarks   Delete | | Historical Status | | | |
|---|---|---|---|---|---|---|
| | | | No of Months | 30 days | 60 days | 90 days |

When you sign this form you certify that you computer and/or manual records have been adjusted to reflect any changes made

Reason for deletion or status change from adverse to favorable   delete tradeline account
Converted and replaced with Visa

Authorized Signature _____ Em ldare Em le _____   Date   12/12/02   (561) 995-8820

Please Print Name _____   Telephone _____

## UNIVERSAL DATA FORM

This form is for reporting or updating account information

☐ New   ☐ Delete   ☒ Change   change makes node current sp evious de nquenc his ory o be de e ed?   ☐ YES   ☒ NO

You  egu arly report data   ☐ Au oma ed   ☒ Manua
Do no nc ude secur ty passwo ds with codes be ow

| | |
|---|---|
| Subsc be Name | Cross Country Bank | Subscribe Code | 458BB02969 |
| Subsc be Add ess | 800 Delaware Ave 8th Floor | Subscribe Code | 1216355TNAI |
| | Wilmington, DE 19801 | Subscribe Code | B244B008 |

### CONSUMER INFORMAT ON

| Su name | F rs | M | Suffix | SSN | DOB/Age |
|---|---|---|---|---|---|
| Anderson | Penny | | | 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 | 01-1966 |
| Cu er Add ess | 1014 Hazelwood Blvd | | C y New Richmond | Sta e WI | Z P 54017 |
| Previous Address | | | C y | Sta e | Z P |
| Curren Employe Name | | Occupa on | | C y | Sta e |

| Co-App can Surname | F rs | M | Suffix | SSN | DOB/Age |
|---|---|---|---|---|---|
| Anderson | Russell | | | 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 | |

Add tional Co App cant Information (Complete only f on t Account)

| Co App can Surname | | C y | Sta e | Z P |
|---|---|---|---|---|
| Anderson | | New Richmond | WI | 54017 |
| Co-App can Employe Name | | Occupa on | | C y |

### CURRENT H STORICAL ACCOUNT INFORMATION

| Accoun Numbe | Da e Open | Presen Sta us Open | High Ba ance | Paymen H s ory | Type Acct/ MOP |
|---|---|---|---|---|---|
| 4227-0474 8440-6736 | 04/99 | Da e 12/9/02 Curren Ba ance Amoun Pas Due | | nd cas e whether MOP His ory or ☐  No of Payments De nquen | R1 |
| C oss Country Bank | | | | | |

| Ma o Sta us Code 11 | C ed L m t 1900 | Terms/ Amoun | Max mum De nquency De e Amoun MOP | Sta us or C osed Da e | ECOA 2 |
|---|---|---|---|---|---|

| Type o Loan/Co e a R | Spec a Comments/Remarks Removal of deceased status | H s once Sta us No of Months | 30 days | 60 days | 90 days |
|---|---|---|---|---|---|

When you s gn h s orm you cert fy tha your compu er and/or manua ecords have been adjus ed o re flect any changes made

Reason or de et on or sta us change rom adverse o avorab e  due to system error, app cant and co-app cant a e be ng reported as deceased remove deceased status.

Au horized S gna u e _____ Da e  12/12/02

P ease Pr n Name  **Em Idare Em le** _____   Te ephone  (561) 995-8820

E-Oscar Web - Reports                                                                     Page 1 of 1

## Universal Data Form

| This form is for reporting or updating account information: | | | If Change makes trade current is previous delinquent history to be deleted? | |
|---|---|---|---|---|
| Change ☑ | Delete ☐ | Add ☐ | Yes ☐ | No ☐ |

| Subscriber Name: Applied Card Systems | Equifax SC | 458BB02969 | Innovis SC | - |
|---|---|---|---|---|
| Subscriber Address: 4700 Exchange Court  Boca Raton  Florida  33431-- | Experian SC | 1216355 | TU SC | 24UB128 |

### CONSUMER INFORMATION

| Last Name Anderson | First Penny | Middle - | Gen. - | SSN 001589006 | DOB 01-01-1960 |
|---|---|---|---|---|---|

| Current Address 1614 HALLEWOOD BLVD | | City New Richmond | State WI | Zip + 4 54017-- |
|---|---|---|---|---|

| Previous Address - | | City - | State - | Zip + 4 --- |
|---|---|---|---|---|

| Consumer Information Indicator - | ECOA 2 | Phone # - |
|---|---|---|

### EMPLOYMENT INFORMATION

| Employer Name - | | Occupation - | |
|---|---|---|---|

| Current Address - | City - | State - | Zip + 4 --- |
|---|---|---|---|

### ASSOCIATED CONSUMERS INFORMATION

| Last Name - | First - < | Middle - | Gen. - | SSN - | DOB - |
|---|---|---|---|---|---|

| Current Address - | City - | State - | Zip + 4 --- |
|---|---|---|---|

| Consumer Information Indicator - | ECOA - | Phone: - | |
|---|---|---|---|

| Last Name - | First - | Middle - | Gen. - | SSN - | DOB - |
|---|---|---|---|---|---|

| Current Address - | City - | State - | Zip + 4 --- |
|---|---|---|---|

| Consumer Information Indicator - | ECOA - | Phone: - | |
|---|---|---|---|

### Account Information

| Account Number | Date Opened | Billing Date | Current Balance | Amount Past Due | Payment History 1-84 Months |
|---|---|---|---|---|---|
| 4227097484406736 | 04-16-1999 | - | 1929 | - | |
| Terms Duration/Frequency | Date Closed | Actual Payment | Date of Last Payment | Account Status | Account Type |
| - / - | - | - | 10-02-2003 | 11 | 01 |
| Portfolio Type | Credit Limit | High Credit | Scheduled Monthly | Special Comment Code | |
| R | - | - | - | - | |
| Payment rating | Activity Date | FCRA 1st Date of Delinquency | Original Charge off Amount | Compliance Condition Code | |
| - | 10-10-2003 | - | - | XB | |

| Original Creditor Name | Creditor Classification |
|---|---|
| - | - |

| Purchased Portfolio or Sold to Name | Portfolio Indicator |
|---|---|
| - | - |

| Mortgage Agency Identifier | Secondary Marketing Agency Account # | Specialized Payment Indicator | Deferred Payment Start Date | Deferred Payment Due Date | Deferred Payment Amount |
|---|---|---|---|---|---|
| - | - | - | - | - | - |

| Mortgage Identification # (MIN) | AUD Control # |
|---|---|
| - | 2371341 |

**When you sign this form, you certify that your computer and/or manual records have been adjusted to reflect any changes made.**

**Authorized Signature:**                          **Date: 10-15-2003**

Please Print Name: CASSANDRA HARMON          **Telephone: 5619958820**

```
.OR                              TRANS UNION CORPORATION            DATE: 11/26/02   TIME: 06:34
:PT-.   KKVRB508-1                 CONSUMER RELATIONS                              PAGE: 4163
                        CRS ACDV/ACTV RESPONSES AUTOMATICALLY PROCESSED

J3 DEPT: N
N    IBER RESPONSE DATE: 11/25/02                    CONTROL: 14862743 002 01    MA/SM: 0912   SUB LOC: 001
:O COMPLY WITH F.C.R.A., A RESPONSE IS REQUIRED BY: 11/20/02   DATE:   11/14/02

                                              VERF     SUBSCRIBER CHANGES TO CONSUMER DEMOGRAPHIC DATA:
NAME: ANDERSON,RUSSELL,D          ,SR          (D) NAME: ANDERSON,RUSSELL,**************,
 AKA:                                              AKA:
 ADDR: 1614  HALLEWOOD EV                       (D) ADDR: 1614 HALLEWOOD BLVD
       NEW RICHMOND ,WI 54017                             NEW RICHMOND ,WI 54017-
 PREV: 1380  HERITAGE DR 17                     (U) PREV: *******************************************
       NEW RICHMOND ,WI 54017                             **************************,** *****
 SSN/DOB/PHONE: 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 /  09/01/60 /  000-246-2213     (S) SSN/DOB/PHONE:          / ******** /

                                                  CNTL# 14862743 002 01   DATE RECD: 11/06/02  PRI: 3

CONSUMER     SUBSCRIBER COMMENT/REMARKS MESSAGE DISPUTED
 STATES
COMMENTS


            SUBSCRIBER NAME      SUB.CODE      OPENED  RPT'D   BAL.OWING   PAST DUE   HIGH CRDT   PAYMENT        TP.ACCT  MOP
            ACCOUNT NUMBER       CREDIT LIMIT  TERMS           LAST PYMT   MAX.DELQ.DATE MD.AMT MD.MOP  HISTORY              ECOA
            TYPE LOAN            COLLATERAL/FLAG               SP.COMMENTS/STATUS/REMARKS   CLOSED    MOS 30 60 90

VERIFIED    CRS CNTY BK          B 24UB126     04/99   10/02A    $1847       $0        $1959    111111111111      R    01
 AS         4227097484406736          $1900                                                    111111111111           X
REPORTED: X CREDIT CARD                                        DECEASED                         0   0   0   0

:F                                             11/02A
):.
3F   :                                                                                 ***

                                               DECEASED /NOT DECEASED
                                               JOINT CONSUMERS


RESPONSE CODES:    035 VERIFIED AS REPORTED.



RESPONSE NARRATIVE:
CONSUMER MESSAGE:
AUTHORIZED PHONE/NAME:    561-995-8820    /   LINNEIR CLARKE
```



DEPOSITION
EXHIBIT
#23

TU0052

1              MR. CENTO:  We will do that.

2              MR. LYONS:   Thank you.

3    BY MR. LYONS:

4         Q.      Now, I am showing you what has been

5    marked as Deposition Exhibit 8.  Can you identify

6    this document for me?

7         A.      It's a copy of an ACDV that was sent

8    to Cross Country.

9         Q.      What was the date that it was sent

10   to Cross Country?

11        A.      November 14, 2002.

12        Q.      And when does Trans Union require a

13   response from Cross Country Bank by?

14        A.      11/25.

15        Q.      And that says right up there

16   "Subscriber response date 11/25"?

17        A.      Yes.

18        Q.      That's the date by which they need

19   to respond back to Trans Union, correct?

20        A.      Right.

21        Q.      If they don't respond back by that

22   day, then it gets coded as a did not respond,

23   right?

24        A.      Yes.

**EXHIBIT**

*Little*

**_B_**

tabbies®

Eileen Little

37

1　　　testimony from a fact witness.  You can

2　　　answer if you can.

3　　　　　　THE WITNESS:  No, the Act doesn't

4　　　say they have to respond in six days.

5　BY MR. LYONS:

6　　　Q.　　Now, this ACDV is related to the

7　November 2002 dispute that we talked about before

8　that has been marked as Deposition Exhibit 5,

9　correct?

10　　　A.　　Yes.

11　　　Q.　　What date was the communication sent

12　from Trans Union to Cross Country Bank?

13　　　A.　　11/14.

14　　　Q.　　And, if we look down towards the

15　middle of the page, we see the Cross Country Bank

16　marked or responded to the ACDV by marking

17　"Verified as reported."  Do you see that?

18　　　A.　　Yes, correct.

19　　　Q.　　Then it appears that Cross Country

20　Bank also responded by updating the date of

21　reporting; is that correct?

22　　　　　　MR. CENTO:  Objection to the form;

23　　　vague and ambiguous with respect to the term

24　　　"respond".

Eileen Little

38

```
 1                  THE WITNESS:  Yes.
 2   BY MR. LYONS:
 3       Q.      And Cross Country Bank also seemed
 4   to make some kind of a change to the ECOA
 5   indicator.  Do you see that?
 6       A.      Yes.
 7       Q.      And what was that change?
 8       A.      They put an asterisk there.
 9       Q.      What does that mean?
10       A.      That they wanted that deleted.
11       Q.      Is that what the asterisk means?
12       A.      Yes.
13       Q.      Is that the appropriate response?
14               MR. CENTO:  Objection to the form.
15               THE WITNESS:  Well, the whole
16       response is inconsistent.  They put verified
17       as reported no matter what changes they
18       wanted.  They can't have both.  It's either
19       verified as reported or changed.  They chose
20       verified as reported.  So the changes would
21       not happen.
22   BY MR. LYONS:
23       Q.      So their response was inconsistent?
24               MR. CENTO:  Objection to the form of
```

DATE: 11/26/02  TIME: 06:34

.C. 03                                    TRANS UNION CORPORATION                              PAGE: 4163
PT-ID: KKVRB508-1                          CONSUMER RELATIONS
                              CRS ACDV/ACTV RESPONSES AUTOMATICALLY PROCESSED

3       N
:   IBER RESPONSE DATE:  11/25/02              CONTROL: 14862743 002 01        MA/SM: 0.912   SUB LOC: 001
D COMPLY WITH F.C.R.A., A RESPONSE IS REQUIRED BY: 11/20/02    DATE:    11/14/02

                                              VERF     SUBSCRIBER CHANGES TO CONSUMER DEMOGRAPHIC DATA:
                                              (D) NAME: ANDERSON,RUSSELL,***************,
AME: ANDERSON,RUSSELL,D          ,SR              AKA:
AKA:                                          (D) ADDR: 1614 HALLEWOOD BLVD
DDR: 1614 HALLEWOOD BV                             NEW RICHMOND ,WI 54017-
     NEW RICHMOND ,WI 54017                    (U) PREV: *****************************************************
REV: 1380  HERITAGE DR 17                            ********************************,** *****
     NEW RICHMOND ,WI 54017                    (S) SSN/DOB/PHONE:                    / ******** /
SN/DOB/PHONE: 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 /  09/01/60 / 000-246-2213

                                                  CNTL# 14862743 002 01   DATE RECD: 11/06/02  PRI: 3

ONSUMER      SUBSCRIBER COMMENT/REMARKS MESSAGE DISPUTED
STATES
OMMENTS

              SUBSCRIBER NAME    SUB.CODE     OPENED  RPT'D    BAL.OWING   PAST DUE   HIGH CRDT   PAYMENT        TP.ACCT  MOP
              ACCOUNT NUMBER     CREDIT LIMIT  TERMS         LAST PYMT  MAX.DELQ.DATE MD.AMT MD.MOP  HISTORY               ECOA
              TYPE LOAN          COLLATERAL/FLAG            SP.COMMENTS/STATUS/REMARKS  "CLOSED     MOS  30  60  90

VERIFIED      CRS CNTY BK        B 24UB126    04/99  10/02A    $1847        $0        $1959      111111111111        R    01
   AS         4227097484406736       $1900                                                      111111111111             X
EPORTED: X    CREDIT CARD                              DECEASED                                   0   0   0   0

                                             11/02A
HANGE
DATA AS                                                                                          ***
SP  :                                        DECEASED /NOT DECEASED
                                             JOINT CONSUMERS

RESPONSE CODES:    035 VERIFIED AS REPORTED.


RESPONSE NARRATIVE:
CONSUMER MESSAGE:
AUTHORIZED PHONE/NAME:    561-995-8820    /   LTNNBIR CLARKE


**TU0052**

1    says the reason that Capital One denied the credit application, Penny and

2    Russell Anderson's credit card application on May 29th, 2002.  Do you see

3    that?

4         A       That's under number one?

5         Q       Yes.

6         A       Yes.

7         Q       Can you tell me the reason why Penny and Russell

8    Anderson were denied on May 29th, 2002 by Capital One?

9         A       The information provided to us from the credit bureaus

10   indicated that the Social Security number reflected the person as deceased.

11        Q       What Social Security number was provided or how were

12   the Social Security numbers provided to Capital One in the credit

13   application?

14        A       The Social Security numbers were provided by the

15   applicant with their application.

16        Q       Was that application telephonic or in writing?

17        A       The first application that I had, let me look here for

18   Russell Anderson.  Russell Anderson was actually received in the mail.

19        Q       The application Mr. Anderson submitted was by mail?

20        A       Right, that matches up with the letter number, letter B.

21   That was received by mail.  You lost me there for a minute.

22        Q       Do you think Russell Anderson's related to the May 29th,

23   2002 Capital One application was submitted by Mr. Anderson to Capital

24   One via mail?

25        A       That's correct.  To the best of my knowledge, the one we



1    received, we actually received it on May 21, 2002.  We received two, one

2    from Russell and one from Penny Anderson.  And those to the best of my

3    knowledge were received by mail.

4            Q      On or about what date?

5            A      We received them on or about May 21st, 2002.

6            Q      How does Capital One process, or what steps does Capital

7    One take to process those applications?

8            A      Upon receiving the application the information is inputted

9    into our credit system which makes the decision for us and actually queries

10   the bureaus electronically for information.

11           Q      Which credit reporting agencies or bureaus did the system

12   communicate with?

13           A      We communicate with all three major bureaus, but we

14   base our decision on one.

15           Q      Which credit reporting agency does Capital One base its

16   decision on?

17           A      We base our decision on the TransUnion report.

18           Q      Is it your testimony that the TransUnion report that was

19   accessed by Capital One credit scoring system so that the applicant Russell

20   Anderson and Penny Anderson were both deceased?

21           A      That is correct.

22           Q      As a result of that deceased status code being received by

23   Capital One from TransUnion, did Capital One issue an ECOA letter to the

24   Andersons?

25           A      Yes, we did.

1    A       I can look that information up to see if it's available.

2    Q       What about the credit reports that are electronically

3    accessed by Capital One in its credit application system, are those available?

4    A       The information that is pertinent to Capital One from the

5    bureaus is electronically inputted into our system, so it's not an actual credit

6    report that we receive, as in a piece of paper type of thing.

7    Q       It's electronic data that's received?

8    A       It's electronic data that we receive and we have the

9    information that is pertinent to us.

10   Q       Can that information be printed and distributed?

11   A       No, it cannot.

12   Q       Why is that?

13   A       That information is proprietary, those screens contain

14   proprietary information to Capital One's business, and if released would be

15   damaging to the business.

16   Q       Do you know what information was presented to Capital

17   One by the Andersons subsequent to May 29th, 2002, correspondence being

18   sent to the Andersons by Capital One?

19   A       Yes.

20   Q       What was that?

21   A       With a copy of the letter they sent back, the copy of their

22   Social Security, received a copy of their bank statement and that name and

23   information, Social Security information, name matched that person.

24   Q       As a result of the Andersons submitting additional

25   information to Capital One, what result did that have?

1     A      We did approve the credit application.

2     Q      How long after the May 29, 2002 was the Capital One

3 credit card approved?

4     A      I apologize, I don't have an exact date in front of me.

5 I thought I brought it with me, I did not. I just have that we received the

6 information on June 24th, 2002. And after that information was received, we

7 went ahead and processed the application and approved it.

8     Q      You don't know the approval date?

9     A      I don't have it in front of me, I thought I did and I

10 apologize that I did not.

11     Q      Was that joint, or what type of an account was that that

12 was opened after June 24, 2002?

13     A      The account was opened for Russell Anderson.

14     Q      So, it's your testimony you don't believe Penny opened an

15 account after May 29, 2002?

16     A      I don't believe so.

17     Q      Do you know whether or not information was received

18 relative to Penny Anderson in an attempt to try to open an account after

19 May 29, 2002?

20     A      I'm not showing any record of information received

21 regarding Penny's information, Ms. Anderson's information.

22     Q      You're showing the information received was only

23 information related to Russell Anderson?

24     A      Yes, that's the only information I have available to me

25 right now.

1     Q      What information do you have available to you now?

2     A      I have the documentation that we received, his Social

3  Security card and a copy of his bank statement that matched.

4     Q      Do you have a copy of the card and a bank statement?

5     A      No, I do not.

6     Q      Do you have a note that tells that those items were

7  received related to Russell?

8     A      Yes, when I looked up his information that was available

9  to me.

10    Q      Did you make any search relative to Penny Anderson?

11    A      Yes, I did, but nothing came up.

12    Q      Do you have record of the correspondence that's attached

13  as Exhibits B and C to deposition exhibit number one?  By correspondence,

14  I mean the information that's handwritten on B and C back to Capital One

15  from the Andersons?

16    A      I have copies of that in front of me, yes.

17    Q      In the records of Capital One, does it show what

18  information was received and at what time after May 29th, 2002?

19    A      Only as to Russell Anderson on June 24th, I'm showing we

20  received information, a Social Security card and bank statement.

21    Q      Do you see, do you not, Exhibit B attached to Capital One

22  exhibit number one is from Penny Anderson?

23    A      Yes.

24    Q      Do you see also Exhibit C appears to be from Penny

25  Anderson, at the very bottom of the page?

1              CROSS EXAMINATION

2    BY MR. LANE:

3

4              Q        Hi, Mr. LeBlanc, my name is Chris Lane, representing

5    TransUnion.  Are we to understand that based on Exhibits B and C, that

6    Russell Anderson and Penny Anderson applied for separate credit cards or

7    was that a joint application?

8              A        That was separate applications to the best of my

9    knowledge.

10             Q        It's your understanding that Russell Anderson eventually

11   provide some additional information that resulted in his being granted the

12   card?

13             A        Yes.

14             Q        But you're unaware with respect to Penny Anderson or do

15   you know that she did provide additional information?

16             A        I'm not aware of any information she provided, I was

17   unable to locate any additional information she provided, if she did.

18             Q        I think you mentioned before that you forgot to bring with

19   you what date the credit application was approved, is that right?

20             A        Yes, that is correct.

21             Q        Is that something that is readily accessible to you if we

22   took a break at some point during the deposition, how long would it take

23   you to find that information?

24             A        I could locate it in a matter of a minute or so.

25             Q        At some point, we'll take a break and see if you can get

1    Q       I think you have not been able to affirmatively say that she

2    did not send in any additional information, only that you have not been able

3    to find any additional information.  I'm wondering if there's any other

4    avenues or anyone else that can search the different systems or look at hard

5    copies of things or recreate something that might give us more information

6    on what happened to Penny Anderson's application after May 29th, 2002.

7    A       Any information that's mailed in to Capital One is imaged

8    into our electronic storage system for documents.  Any number of things

9    could have happened, it could have been miskeyed or an application number

10   could have been reversed or altered by the person keying it and

11   electronically filed that information under some other number.  The only

12   way to search would be to take every possible number combination, that

13   twenty-four or twenty-six digit number and key each one individually which

14   would be a cumbersome type of thing.

15   Q       It's not cross-referenced with a person's name or their

16   Social Security number?

17   A       No, it's filed by application number unless they have an

18   account with us, and then it may be cross referenced with their Social

19   Security number because they would have an account with us, so that

20   information would be part of our database.

21   Q       If Penny Anderson would have provided you with this

22   additional information, you would suspect that there would be at least two

23   additional representations, one being her submission and two being Capital

24   One's response to her submission?

25   A       That is correct.  Any response or request for credit, we're

1    required by law to respond back to that person.

2          Q        So there would have had to have been two misfilings or

3    typos.

4          A        Right, that information would probably have been keyed

5    all at the same time.  To the best of my knowledge, if we had received two

6    pieces of paper from the customer and it was information we needed or

7    required, we would type or generate that letter to go right then and put it all

8    together to be filed under that application number.

9          Q        If she had given you additional information, your system

10   would have recorded the receipt of that letter, correct?

11         A        Correct.

12         Q        Then based upon receipt of that additional information,

13   Capital One decided we're going to give her the card or nay, we're not

14   going to give her the card, your system would have sent out a letter to that

15   effect?

16         A        Yes, it would have all been done at the exact same time.

17         Q        So it would not have been two separate transactions?  Is it

18   fair to say that if she had a call back and said, hey, my husband sent his in,

19   you gave him the card and I sent mine in and you didn't give it to me, it's

20   your testimony your system does not keep track of those phone calls.

21         A        Correct, we don't document every phone call that comes

22   in to Capital One.

23         Q        Mr. Anderson's application, pursuant to the May 29th,

24   2000 letter, is that a handwritten application?

25         A        Which one are you referencing?

1     Q      The May, 2002 situation.

2     A      Yes, the system indicates it was a received application in

3     the mail.

4     Q      Does it indicate the same for Penny Anderson?

5     A      Yes, it does.

6     Q      Just so I can finish up, does anyone have an objection if

7     we can take a quick break.  He said it might take a minute or two to try to

8     figure out whether that credit card was approved.

9     A      The account was approved, I thought the information you

10    wanted was his personal credit card number, the account he's using today.

11    Q      No, I wanted to know when you approved him.  I think

12    you testified once you received the additional information, the Social

13    Security number or the card and the bank statement on June 24th.

14    A      Yes.

15    Q      You just don't know exactly when you approved the

16    credit.

17    A      Yes, that's correct.

18    Q      Is that still something you can figure out in a couple of

19    minutes?

20    A      Yes.

21

22           MR. LYONS:  Does anyone have an objection if we take a

23    break while he's figuring that out?  All right, then let's do that Mr. LeBlanc.

24           WITNESS LEBLANC:  Okay, I'll put you on mute.

25           MR. LYONS:  Let's take about a three minute break.

1

2    NOTE:  A BREAK IS HAD, WHEREUPON THE DEPOSITION

3    CONTINUES, VIS:

4

5                        MR. LANE:  Is everyone back? Okay.

6

7    BY MR. LANE:

8

9            Q        Can you now answer the question as to when that original

10   application May, 2002 was approved?

11           A        We received the documents on June 24th, 2002 and

12   approved the application on June 25th, 2002.

13           Q        Do you know at this point whether or not Mr. or Mrs.

14   Anderson's original applications in March of 2002, if they were seeking to

15   take advantage of any type of special offers that Capital One was offering at

16   that time?

17           A        I'm not aware of any type of special offer that they would

18   have been applying for specifically.

19           Q        Is that something that your system would keep track of?

20           A        We could probably determine what that offer was based on

21   the application number.

22           Q        In a situation like this, where the person sends in

23   additional information, would they still be given the benefit of the original

24   offer even if the time frame has passed?

25           A        Yes, because we received the actual application within the

1    time frame for that offer.

2          Q      Based on the date that the application is received, not

3    based on the approval date?

4          A      That's correct.

5          Q      So, whatever terms he could have gotten on May 29th,

6    2002 he would have received on June 25th, 2002?

7          A      That is correct.

8          Q      I don't have any other questions, thank you.

9          A      You're welcome.

10

11    CROSS-EXAMINATION

12    BY MR. PERLING:

13

14          Q      I'm Lewis Perling.  Mr. LeBlanc, can you hear me okay?

15          A      Yes.

16          Q      I represent Equifax.  Is it your testimony Capital One

17    pulled an Equifax credit report with regard to Russell Anderson in May,

18    2002?

19          A      To the best of my knowledge, yes.

20          Q      You say to the best of your knowledge, what gives you

21    that impression that's what happened?

22          A      My understanding of the credit process, when an

23    application is keyed in that in a matter of seconds we're querying and

24    receiving information from the three bureaus.

25          Q      It's typically Capital One's procedure that it would pull