Document Number Case Number
108                03-C-0510-C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
01/13/2005 04:42:04 PM CST

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

| | |
|---|---|
| PENNY LEE ANDERSON and RUSSELL D. ANDERSON, SR., | CASE NO. 03-C-0510-C |
| Plaintiffs, | JUDGE BARBARA B. CRABB |
| v. | |
| TRANS UNION, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; CSC CREDIT SERVICES, INC.; EQUIFAX, INC. d/b/a EQUIFAX INFORMATION SERVICES, LLC; APPLIED CARD SYSTEMS, INC.; and CROSS COUNTRY BANK, INC., | |
| Defendants. | |

---

### AFFIDAVIT OF WILLIAM STOCKDALE

---

I, William Stockdale, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.      I am employed as a Senior Director of Customer Information Services for Trans Union, LLC ("**Trans Union**").  In the ordinary course of my employment, I have personal knowledge of Trans Union's practices and procedures relating to the maintenance and processing of credit information.

2.      Trans Union is a consumer reporting agency as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. 1681a(f) (the "**FCRA**").

3.      As a consumer reporting agency, Trans Union collects credit information furnished to it by various sources around the country including banks, credit unions,

1

automobile dealers, student loan providers and others (these sources are known as "**furnishers**" within the credit reporting industry and under the FCRA).

4.      Trans Union collects information from more than 85,000 furnishers.

5.      One of Trans Union's furnishers is Cross Country Bank ("**CCB**").

6.      Trans Union's experience with CCB is that CCB is a reliable source of credit information and is unlikely to report inaccurate information except in isolated instances.

7.      Trans Union assembles the information it collects into credit files and generates consumer disclosures and consumer reports that are then given to consumers or others (also known as "**subscribers**" within the credit reporting industry), respectively.

8.      Trans Union maintains credit files on approximately 200 million consumers, including Plaintiffs Penny and Russell Anderson.

9.      This process is largely electronic.

10.      Electronic transmission is used to ensure the greatest level of uniformity and accuracy.

11.      Trans Union also has contracts with its furnishers requiring them to report accurately as required by FCRA.

12.      These furnishers provide information to Trans Union through the use of coded tapes typically transmitted on a monthly basis.

13.      Trans Union receives approximately 22 billion records per month from its furnishers.

14.     Trans Union processes the information electronically, matching the credit information with a particular consumer's credit file through a set of computing rules called algorithms or logic programs.

15.     Furnishers update the credit files electronically to reflect new information regarding the reported accounts.

16.     Trans Union's system permits furnishers to report information that a consumer has passed away.

17.     Furnishers report deceased information by sending a code of "X" in the ECOA Code Field of their coded tapes.

18.     At the present time, Trans Union maintains more than five million tradelines which are reporting a deceased code.

19.     Of the consumer files which contain tradelines reporting a deceased code more than two million files contain only one tradeline reporting a deceased code.

20.     Also at the present time, there are more than eleven thousand Trans Union subscribers reporting at least one tradeline with a deceased code.

21.     Trans Union's experience is that it is not unusual for deceased consumers to have apparently "active" accounts, either because transactions are not reconciled until after the consumer has died or because a spouse or personal representative is paying off the decedent's debts or incurring new ones on the same account or for a variety of other reasons including identity fraud.

22.     If Trans Union were required to notify consumers that one creditor has reported then deceased, Trans Union would incur enormous costs since such notifications could not be done electronically.

4

I AFFIRM UNDER THE PENALTIES FOR PERJURY THAT THE FOREGOING REPRESENTATIONS ARE TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE AND BELIEF.

*s/ William Stockdale*
William Stockdale
Senior Director Consumer Information Services
TRANS UNION, LLC

4